**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**JIMMY FINDLEY**                                                     **PLAINTIFF**

**V.**                      **CASE NO. 3:19-CV-245-BD**

**ANDREW SAUL, Commissioner,
Social Security Administration**                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

**I.**      **Introduction:**

Jimmy Findley applied for disability insurance benefits on October 2, 2016, alleging disability beginning February 3, 2016. (Tr. at 10) Mr. Findley's claims were denied initially and upon reconsideration. (Tr. at 113-115, 118-120) After conducting a hearing, the Administrative Law Judge[1] (ALJ) denied his application. (Tr. at 11-37) Mr. Findley requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1-5) Therefore, the ALJ's decision is the final decision of the Commissioner. Mr. Findley filed this case seeking judicial review of the decision denying him benefits. [2]

**II.**      **The Commissioner's Decision:**

In his decision, the ALJ found that Mr. Findley had not engaged in substantial gainful activity since his alleged onset date and had the following severe impairments: history of spinal fractures including T12, L1, L2, and L3 anterior wedge compression

---

[1] The Honorable Bradley L. Davis.

[2] The parties consented to proceed before a Magistrate Judge. (Doc. No. 4)

1

fractures as well as an L4 coronal split fracture status post in situ fusion through a percutaneous transpedicular approach from L3 to L5. Mr. Findley underwent left-side L5-S1 microdiscectomy for decompression of his traversing S1 nerve root; a history of posterior lumbar interbody fusion at the L5-S1 level; history of lateral malleolus fracture; posterior tibial tendon dysfunction; complete tear of the anterior cruciate ligament status post right knee anterior cruciate ligament reconstruction; pseudo-seizures; major depressive disorder; and unspecified anxiety disorder. (Tr. at 12)

The ALJ found that Mr. Findley's impairments did not meet or equal a listed impairment. (Tr. at 13) He determined that Mr. Findley had the residual functional capacity (RFC) to perform sedentary work except he could only occasionally stoop, kneel crouch, and crawl. He could not operate food controls, and he could not work around hazards, such as unprotected heights or dangerous moving mechanical parts. The claimant would require the use of a cane to ambulate. Finally, he could perform work with only incidental interpersonal contact (meaning no sales or solicitation, just very superficial meet and greet situations); the work must be learned in a 30-day period or less and must require little judgment to perform simple tasks. Mr. Findley was deemed able to tolerate occasional changes in a routine work setting. (Tr. 14-34)

The ALJ found that Mr. Findley would be unable to perform his past relevant work as a construction worker, injection molding machine tender, industrial truck operator, tractor trailer truck driver, and heating and air conditioning installer and servicer. (Tr. at 34) Relying on the testimony of a Vocational Expert (VE), the ALJ found that, based on Mr. Findley's age, education, work experience and RFC, that he could

perform work in the national economy as a document preparer and circuit board assembler. (Tr. at 35-36) Based on these findings, the ALJ concluded that Mr. Findley was not disabled. (Tr. at 36)

### III. Discussion:

#### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ash v. Colvin*, 812 F.3d 686, 689 (8th Cir. 2016) (quoting *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). In reviewing the Commissioner's decision, the Court must consider not only evidence that supports that decision, but also, evidence that supports a contrary outcome. *Id*. (quoting *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010)). The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Lacroix v. Barnhart*, 465 F.3d 881, 885 (8th Cir. 2006) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

#### B. Mr. Findley's Arguments on Appeal

Mr. Findley argues that the ALJ's decision to deny benefits is not supported by substantial evidence. Specifically, he maintains that the ALJ erred: in finding he did not meet a listed impairment; in his credibility assessment; in weighing the medical opinions; by using a hypothetical that did not include all his limitations; and by using unreliable vocational expert testimony to support the decision. (Doc. No. 12 at 14-32)

3

### C. Listed Impairment

Mr. Findley argues that the ALJ did not adequately consider whether he met listings 1.02 (major dysfunction of a joint), 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint) or 1.04 (disorder of the spine). The record, however, does not support Mr. Findley's claim that he met any of those listings. The ALJ clearly considered whether Mr. Findley met either listing 1.02 or 1.04. (Tr. 13) Although the ALJ did not specifically address listing 1.03, the failure to address a specific listing is not reversible error if the record supports the overall conclusion. *Pepper ex rel. Gardner v. Barnhart,* 342 F.3d 853, 855 (8th Cir. 2003).

A claimant has the burden of proving that an impairment, or combination of impairments, meets or equals the criteria for a listed impairment. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) (citing references omitted).

One criterion of both Listings 1.02 and 1.03 is that the claimant is unable to ambulate effectively on a sustained basis. This means that the claimant must show that he is not "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b)(2). Examples of ineffective ambulation "include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes...." *Id*. Mr. Findley testified that he used a cane, but that he was able to ambulate. (Tr. 52, 54) The

record does not support a finding that he could not ambulate effectively for a sustained period.

Listing 1.04 criteria include spinal disorder resulting in the compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04(A).

The record certainly evidences severe impairments resulting in limitations; but it also shows that Mr. Findley did not meet the requirements of Listing 1.04 over an extended period. As the ALJ noted, medical records indicate that, at times, Mr. Findley had: no back pain; full range of motion; negative straight-leg test; full motor strength; normal gait, station and coordination; and normal sensory and neurological function. (Tr. 23, 327, 329-30, 349, 353, 357, 361, 381, 385, 505, 554, 609, 622, 632, 665, 684, 786, 868-69, 1007, 1011, 1014-15, 1018, 1022, 1025, 1029, 1032, 1036, 1040, 1043, 1187, 1194, 1210, 1213, 1217, 1221, 1236, 1264, 1269, 1290, 1291, 1294, 1307, 1313) Additionally, Mr. Findley was able to continue activities of daily living during the relevant time period, such as maintaining personal hygiene, swimming, hunting, fishing, and working on his truck. (Tr. 402, 962, 1243, 1258) Because Mr. Findley did not consistently have extreme limitation in his back, he did not meet listing 1.04.

### D. Residual Functional Capacity and Credibility

Mr. Findley argues that the ALJ's credibility and RFC assessments are not supported by substantial evidence. The ALJ found that Mr. Findley's complaints of pain and limitation due to his symptoms were not entirely credible and that he could perform a limited range of sedentary work. (Tr. at 14-34)

A claimant's RFC represents the most he can do despite the combined effects of all his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining a claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, considering all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

Mr. Findley was in a car accident on his onset date, which resulted in many injuries including multiple thoracolumbar fractures, an L4 coronal split fracture, and a lateral malleoulous fracture in his right ankle. (Tr. 16-17) As a result of the accident, Mr. Findley had two back surgeries. While immediately following his surgeries Mr. Findley had significant limitations, examination notes also show times when he has no back pain or tenderness, full range of motion, negative straight-leg testing, full motor strength, normal sensory and neurological function, and normal gait, station and coordination. (Tr. 327, 329-30, 349, 353, 357, 361, 381, 385, 505, 554, 609, 622, 632, 665, 684, 786, 868-69, 1007, 1011, 1014-15, 1018, 1022, 1025, 1029, 1032, 1036, 1040, 1043, 1187, 1194, 1210, 1213, 1217, 1221, 1236, 1264, 1269, 1290, 1291, 1294, 1307, 1313) During a follow-up examination in November, 2017, Mr. Findley's treating physician noted that

the incisions had healed, no tenderness, no redness, and no edema. He was advised that he could progress to lifting up to 30 pounds. (Tr. 1307)

When assessing the credibility of a claimant's subjective complaints SSR 16-3p requires an ALJ to consider a claimant's: 1) prior work record; 2) the claimant's daily activities; 2) the location, duration, frequency, and intensity of claimant's pain or other symptoms; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; 5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; and 6) any other factors concerning the claimant's functional capacity, limitations, and restrictions due to pain or other symptoms.

In evaluating Mr. Findley's subjective complaints, the ALJ considered these factors. He noted inconsistencies between Mr. Findley's complaints of severe pain and his activities. He observed that, at times, Mr. Findley described fairly limited daily activities, but at other times, he reported being able to clean his room, independently grocery shop, manage money, read, watch television throughout the day, live alone, interact with friends, eat dinner with his girlfriend, hunt, and attend church. (Tr. 22, 26, 29, 962, 1243, 1258)

The ALJ properly considered that Mr. Findley's receipt of unemployment benefits during the second and third quarters of 2016 was an indication of his ability to work. (Tr. 27) See ARK. CODE ANN. § 11-10-507(3) (including claimant's physical and mental ability to work as requirements for receipt of unemployment benefits); see also *Johnson v. Chater*, 108 F.3d 178, 179 (8th Cir. 2997) (a claimant admits an ability to work by

7

applying for unemployment compensation benefits and holding himself out as available, willing, and able to work) (quoting *Jernigan v. Sullivan,* 948 F.2d 1070, 1074 (8th Cir.1991)).

The ALJ pointed out differences between Mr. Findley's complaints of back and ankle pain and the objective medical evidence. In June 2016, four months post-surgery, Mr. Findley reported to the emergency room after jumping into a pool and hitting the bottom. X-rays of his spine indicated no changes since his surgery; and x-rays of his ankle showed no fracture. (Tr. 402, 405, 415) An MRI of Mr. Findley's ankle in September, 2016, showed some tendonitis, "mild" osteoarthritis, and chronic tearing of the ligament. (Tr 337) Objective tests showing mild-to-moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

The ALJ considered Mr. Findley's complaints of right knee pain but noted that he had undergone successful ACL reconstruction surgery. (Tr. 30-31, 908) *Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (citations omitted) (impairments controllable by treatment or medication are not disabling). The ALJ noted Mr. Findley's reports of seizures but observed that these reports were unsubstantiated by objective medical findings such as MRI, EEG, or CT scans. (Tr. 458, 467-68,678, 694, 1320) Subjective complaints alone, without credible supporting medical evidence, are insufficient to establish a severe impairment. See *Reter v. Railroad Retirement Board*, 465 F.3d 896, 899 (8th Cir. 2006).

The ALJ noted that, following several procedures, Mr. Findley appeared to have recovered and, while there was some indication of increased pain, there were also indications of poor motivation and excessive consumption of narcotics. (Tr. 27-29) The ALJ noted that two pain management clinics stopped providing Mr. Findley narcotics due to pain contract violations. (Tr. at 27-29, 324-31, 588-602).

The record reflects several instances of non-compliance with recommended treatment, such as misusing narcotics and declining recommended physical therapy, which the therapist thought had good potential for assisting in a full recovery. (Tr. 329, 588, 593, 867, 1141, 1277, 1281, 1288, 1291, 1319) Mr. Findley also failed to attend individual therapy for his anxiety and depression as recommended by Families, Inc. (Tr. 1241-58) A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of his alleged disability. See *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001).

The ALJ's decision was thorough, cited to the record, and showed that he considered all of the evidence in the record in evaluating Mr. Findley's impairments. The ALJ's RFC and credibility determinations are supported by substantial evidence in the record as a whole. *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (the Court "will defer to credibility determinations that are supported by good reasons and substantial evidence.").

**E. Opinion Evidence**

Mr. Findley complains the ALJ erred in discounting the opinion of Sherry McClary, ARPN. Nurse McClary opined that Mr. Findley would require a cane for

ambulation and gait, would require unscheduled breaks, would regularly miss work, would suffer falls, was unable to bend even occasionally, and was unable to lift up to ten pounds for six hours of an eight-hour day. (Tr. 1180-81)

The ALJ considered, but properly discounted, Nurse McClary's opinion because she is not an acceptable medical source. (Tr. 33) See 20 C.F.R. § 404.1513 (effective Sept. 3, 2013 to March 26, 2017). Additionally, he found that her opinion was based on Mr. Findley's reports rather than objective medical evidence and noted that she did not explain her reasons for finding these limitations. (Tr. 33) These are legitimate reasons for an ALJ to discount a treating provider's opinion. See *Renstrom v. Astrue,* 680 F.3d 1057, 1064–65 (8th Cir. 2012) (affirming where ALJ did not give controlling weight to opinion of treating doctor because it was largely based on the claimant's subjective complaints).

State-agency physicians reviewing the evidence concluded that Mr. Findley's physical and mental impairments were not severe and that he could perform a restricted range of light work. (Tr. 13, 33, 81-82, 84, 105, 108) The ALJ noted that these opinions were not entitled to as much weight as those of examining or treating physicians, but ultimately concluded that the opinions deserved some weight because they were supported by the record, as he explained throughout his opinion. (Tr. 33) It was not error for the ALJ to give these opinions some weight, along with other evidence in the record, in assessing Mr. Findley's RFC. See *Stormo v. Barnhart*, 377 F.3d 801 (8th Cir. 2004)

### F. VE Testimony

Mr. Findley complains that the ALJ erred by asking the VE a hypothetical question that did not include all of his limitations, specifically his use of a cane, ankle and

10

knee instability, inability to bend, need for unscheduled breaks, and difficulties sustaining concentration. The ALJ's hypothetical, however, did account for Mr. Findley's ambulatory issues by limiting the hypothetical individual to sedentary work. As explained above, many of the additional limitations Mr. Findley believes the ALJ should have included in the hypothetical posed to the VE were properly rejected by the ALJ as not supported by the record. The hypothetical posed to the VE covered all of Mr. Findley's limitations and non-exertional impairments that were supported by the evidence.

Mr. Findley also complains that the ALJ erred in relying on VE testimony that there were jobs available that he could perform. (Doc. No. 12 at pp. 31-32) To support his claim, Mr. Findley relies on *Thomas v. Berryhill*, 881 F.3d 672 (8th Cir. 2018), a case where the Court found a conflict between an RFC limiting the claimant to one-to-two step tasks and jobs requiring level-three reasoning. *Thomas*, 881 F.3d at 677-79.

Mr. Findley contends that the ALJ made a similar error in his case by finding that he could perform the jobs of document preparer and circuit board assembler, which require level-three reasoning. But here, in determining Mr. Findley's RFC, the ALJ did not limit him to one-to-two step tasks. Instead, the ALJ found that Mr. Findley had the RFC for work with incidental interpersonal contact, that could be learned within a 30-day period, that would require little judgment to perform simple tasks, and that he could tolerate occasional changes in a routine work setting. Mr. Findley has not established that this RFC is inconsistent with level-three reasoning, which requires a worker to apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and to deal with problems involving several concrete variables in or

from standardized situations. situations. DOT, app. C, pt. III, 1991 WL 688702 (4th ed rev. 1991). Furthermore, Mr. Findley's work record indicates that he successfully worked for several years at jobs requiring level-three reasoning and greater. (Tr. 34, 63)

Finally, Mr. Findley complains that the VE did not provide reliable testimony about the number of jobs available in the national economy for circuit board assemblers. (Doc. No. 12 at pp. 31-32) Even assuming the VE's testimony in this regard was flawed, the VE also testified that a person with Mr. Findley's RFC could perform another job, document preparer, with enough jobs available in the national economy. It was not error for the ALJ to rely on the VE's testimony.

**IV. Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly considered whether Mr. Findley met a listed impairment; weighed the opinion evidence; and evaluated Mr. Findley's subjective complaints. The RFC fully incorporated Mr. Findley's limitations that were supported by the evidence. The finding that Mr. Findley was not disabled is, therefore, AFFIRMED. This case is DISMISSED, WITH PREJUDICE.

IT IS SO ORDERED, this 23rd day of July, 2020.

_____
UNITED STATES MAGISTRATE JUDGE